

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ELGIN DAIRY FOODS, INC.,      )
an Illinois corporation, M & E     )
DISTRIBUTION, LLC, an Illinois   )
limited liability company, and    )
ROBERT L. MARTIN, an individual, )
                           )
      Plaintiffs,         )
                           )
        v.            )     No.  05 C 2505
                           )
SAVANT SOFTWARE, INC., an    )
Arizona corporation, JIM CAWLEY, )
an individual and DIANE CAWLEY, )
an individual,               )
                           )
      Defendants.      )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Jim Cawley's ("J. Cawley") and Defendant Diane Cawley's ("D. Cawley") (collectively referred to as "the Cawleys") motion to dismiss. Additionally, this matter is before the court on Defendant Savant Software, Inc.'s ("Savant") motion to dismiss, motion to strike, and motion for a more definite statement. Finally, this matter is also before the court on Plaintiff/Counter-Defendant Elgin Dairy Foods, Inc.'s ("Elgin") and Plaintiff/Counter-Defendant M&E Distribution, LLC's ("M&E") motion to dismiss

1

the fraud counter-claim (Count III). For the reasons stated below, we deny the Cawleys' motion to dismiss. We also grant in part and deny in part Savant's motion to dismiss, deny Savant's motion to strike, deny Savant's motion for a more definite statement, and deny Plaintiffs' motion to dismiss.

## BACKGROUND

Plaintiffs allege that prior to September 2003, they operated a warehouse distribution center in McCook, Illinois. Plaintiffs allegedly desired to expand their operations at the McCook facility and open an additional facility in Bolingbrook, Illinois. Plaintiffs allege that they contracted with ePartners Inc. to review the existing operating systems at the McCook facility and recommend software systems "for accounting and warehousing/logistics needs." (Compl. Par. 13). ePartners and Plaintiffs allegedly decided to use Great Plains for their accounting needs and Defendant Savant for their warehousing/logistics software needs. Plaintiffs claim that Savant represented "both on-line and in person" (Compl. Par. 15) at the McCook, Illinois facility and at ePartners in Schaumburg, Illinois that "the software provided by Savant would meet and exceed all of their needs and expectations." (Compl. Par. 15). Plaintiffs claim that during the discussions with Savant, the parties specifically discussed certain things that the Savant software would provide and that the Software needed to be compatible with the Great Plains software. Furthermore, Plaintiffs allege that Defendants represented that they were

2

experienced in handling needs for third-party logistics customers.

Plaintiffs contend that the software provided by Savant ("Software") did not meet the needs previously discussed by the parties, and was not compatible with the Great Plains software. Plaintiffs allege that they ultimately had to dispose of Savant's Software and purchase a new system. Plaintiffs claim that Savant had never implemented this system before and used plaintiffs as "guinea pigs" (Compl. Par. 23). Plaintiffs also allege that Savant placed on its website a testimonial provided by Robert L. Martin ("Martin"), Controller of Elgin Dairy Foods, Inc., stating that Savant had met all of the demands of its third-party customers and had helped the company to operate efficiently. Finally, Plaintiffs claim that neither Martin nor anyone working for Plaintiffs had authorized the statement.

Plaintiffs brought the instant action and included in their complaint a breach of warranty claim (Count I), a claim alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Fraud Act"), 815 ILCS 505/12 *et seq.* (Count II), a common law fraud claim (Count III), a claim alleging a violation of the Right of Publicity Act ("Publicity Act"), 765 ILCS 1075/1 *et seq.* (Count IV), and a claim alleging violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (Count V). Savant has filed three counter-claims, which include a breach of contract claim (Count I), a claim alleging that an account stated was created mandating certain payment, (Count II), and a common law fraud claim (Count III).

The Cawleys have filed a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(2). Savant has filed a motion to dismiss Counts II, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Savant has also filed a motion to strike and a motion for a more definite statement. Plaintiff/Counter-Defendants Elgin and M&B have filed a motion to dismiss the fraud counter-claim (Count III).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.; see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *Id.* For the purpose of determining subject matter jurisdiction,

this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in regard to a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

Federal Rule of Civil Procedure 12(b)(2) directs a court to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). For the purposes of such a motion to dismiss, the "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 712-13 (7th Cir. 2002). If a defendant moves to dismiss pursuant to Rule 12(b)(2), "the court must decide whether any material facts are in dispute" in regard to personal jurisdiction and "[i]f so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged." *Id.* If the court finds that there are material facts in dispute, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction," if and until the court holds the necessary hearing. *Id.*

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint.

*Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002);

*Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a

complaint should not be dismissed for a failure to state a claim, "unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also*

*Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the

"plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that]

early stage in the litigation that plaintiffs [could] prove no set of facts in support of

their claim that would entitle them to relief"). Nonetheless, in order to withstand a

motion to dismiss, a complaint must allege the "operative facts" upon which each

claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998);

*Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice

pleading standard in federal courts, a plaintiff need not "plead facts that, if true,

establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of*

*Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that a "[a]t

this stage the plaintiff receives the benefit of imagination, so long as the hypotheses

are consistent with the complaint" and that "[m]atching facts against legal elements

comes later"). The plaintiff need not allege all of the facts involved in the claim and

can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*,

144 F.3d at 455. However, any conclusions pled must "provide the defendant with

at least minimal notice of the claim," *Id.*, and a plaintiff cannot satisfy federal

pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

### I. Personal Jurisdiction

The Cawleys argue that the court lacks personal jurisdiction over them. In a diversity action, the extent of the court's personal jurisdiction is governed by state law regarding personal jurisdiction. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992). The Illinois Long Arm Statute authorizes service of process both on in-state defendants and out-of-state defendants, stating that "[a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: . . .[t]he transaction of any business within this State; . . .[t]he commission of a tortious act within this State; . . .[and] [t]he making or performance of any contract or promise substantially connected with this State; . . . ." 735 ILCS 5/2-209. The Illinois Long Arm statute also provides that "[a] court may also exercise jurisdiction on any other

basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* Thus, in addition to the specific authorized instances of personal jurisdiction, Illinois law allows the exercise of personal jurisdiction over non-resident defendants if doing so comports with the due process provisions of the Illinois and federal constitutions. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

A party is considered "doing business" in Illinois if "it operates within the state, 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994)(quoting *Cook Assocs., Inc. v. Lexington United Corp.*, 429 N.E.2d 847, 852 (Ill. 1981)). The Supreme Court of Illinois has differentiated between the Illinois and federal constitutions. *See RAR*, 107 F.3d at 1276 (noting that the Supreme Court of Illinois "has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections"). However, the Illinois courts have given little guidance in how the two constitutions differ. *Id.* The Supreme Court of Illinois has simply stated that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Id.* (quoting *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill.1990)). As a result, the Seventh Circuit has concluded that there is "no operative difference between the

limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp.*, 302 F.3d at 715 (citing *RAR*, 107 F.3d at 1276). Accordingly, the court will proceed with an analysis of federal constitutional limits on jurisdiction. *See RAR*, 107 F.3d at 1277 (choosing to "move on to address the federal constitutional issues directly").

Federal due process requirements determine when a court "may exercise personal jurisdiction over nonresident defendants." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir.2004)(explaining that the due process law is intended to "allow[ ] potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit). A court may only exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice .'" *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir.1997)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The two types of personal jurisdiction are specific jurisdiction and general jurisdiction. *Jennings*, 383 F.3d at 549. Specific jurisdiction is personal jurisdiction over a defendant in an action "arising out of or related to the defendant's contacts with the forum." *RAR, Inc.*, 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). For the personal jurisdiction analysis, a court must "focus on whether it is fundamentally fair to require the

9

defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 780 (7th Cir. 2003)(citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980) and *International Shoe,* 326 U.S. at 316-17). The court must consider "foreseeability" by the defendant, meaning whether or not "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Purdue Research Found.,* 338 F.3d at 780. In assessing such forseeability, it is the defendant's conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.* In other words, it must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.*

If a defendant's contacts "with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir. 2002); *RAR,* 107 F.3d at 1277. The criteria for "general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction." *Purdue Research Foundation,* 338 F.3d at 787. The defendant's contacts with the forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the

state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id.*

Plaintiffs contend that the Cawleys have had sufficient contacts with Illinois to subject them to specific personal jurisdiction in this matter. The Cawleys contend that they do not have sufficient contacts with Illinois. However, the Cawleys are able to maintain such a position only by artfully offering facts that do not tie them to Illinois, and by failing to respond to the particular allegations in the complaint that indicate they have had contact with Illinois. The Cawleys acknowledge that they are the corporate officers and principal shareholders of Savant. ( Caw Dis 1). They contend however, that it was ePartners rather than Savant that actually sold the software to Savant and that Savant did not directly provide software to Plaintiffs. The Cawleys further claim that they are residents of Arizona and that they have not maintained any office or place of business in Illinois, nor paid state income taxes or real estate taxes in Illinois. The Cawleys claim that they have not maintained an office in Illinois, but the complaint contained no allegations that the Cawleys have ever done so. Plaintiffs allege that "Defendants" made representations to Plaintiffs in Illinois "in person" and "discussed" Plaintiffs' needs, "represented" certain qualifications on their part, and made "presentations," all while in Illinois. (Compl. Par. 15-17). Although the complaint does not specify either of the Cawleys by name in regards to the discussions, representations, or presentations, the Cawleys are the

only individual defendants named in this suit and Plaintiffs claim in their answer to the instant motion that the software "was, in part, installed by the Individual Defendants in Illinois." (Ans. Caw 5). Plaintiffs also claim that D. Cawley "traveled to Illinois to assist in the programming of the Software and to train M&E employees to use such Software." (Ans. Caw 5). Plaintiffs have provided an affidavit to support this assertion.

The Cawleys again merely make evasive responses in their reply brief, and fail to directly address Plaintiffs' allegations concerning personal jurisdiction. For instance, the Cawleys claim in their reply brief that Plaintiffs "did not order Savant's" software "directly from either of the Individual Defendants." (Reply Caw 2). However, Plaintiffs have not contended that Plaintiffs ordered the software from the Cawleys in Illinois. Rather, Plaintiffs contend that the Cawleys made representations and helped install the software while present in Illinois. In the Cawleys' reply brief, the Cawleys state only in the most general terms that Plaintiffs "fail to allege or demonstrate that either of the Individual Defendants personally transacted any business in Illinois or that the Individual Defendants entered into any sort of contract with the Corporate Plaintiffs." (Reply Caw 2). However, the Cawleys continue to avoid pertinent allegations of their personal contacts with Illinois. The Cawleys have not explicitly denied or admitted whether or not they went to Illinois to engage in discussions with Plaintiffs, helped to install the Software, or made representations about the Software. The Cawleys have not

specifically denied making the alleged statements in Illinois upon which Plaintiffs base the fraud and breach of warranty claims. Finally, D. Cawley has not specifically denied that she traveled to Illinois to assist in the programming of the software and to train employees to use the software.

We also note that the Cawleys attempt to distance themselves from any involvement with Plaintiffs, arguing that they only sold the software to ePartners and not directly to Plaintiffs. However, Defendants' allegations regarding the statement of Martin, an employee of Plaintiffs, which indicated that Savant had provided a quality product to Plaintiffs undercuts the Cawleys' contention that they had simply sold the software to ePartners and were not involved in any way with the distribution to Plaintiffs. Likewise, the alleged involvement in the installation and training regarding the software by the Cawleys is inconsistent with the Cawleys' depiction of themselves as simply working for a remote third-party seller.

Based upon the information presented to the court, Plaintiffs have shown that the Cawleys' Software was ultimately sold to Plaintiffs in Illinois and that the Cawleys traveled to Illinois on multiple occasions to facilitate the installation, programing, training concerning their company's software, in addition to making promises concerning the Software to Plaintiffs. It is not necessary to conduct an evidentiary hearing to address the personal jurisdiction issue because the Cawleys have not directly denied the pertinent allegations made by Plaintiffs, despite the fact that the Cawleys have been given an opportunity to do so in their briefs. Such

contacts by Defendants with the state of Illinois are sufficient to subject the Cawleys to specific personal jurisdiction in regard to the issues presented in the instant action. Therefore, we deny the Cawleys' motion to dismiss.

## II. Savant's Motions

Savant moves to dismiss the fraud-based claims (Counts II and III) under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Savant also moves to dismiss the Publicity Act claim under Rule 12(b)(1).

### A. Fraud Based Claims (Counts II and III)

Savant argues that Plaintiffs have not stated the fraud-based claims with the particularity required under Rule 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b), in regard to fraud claims, "is to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual" because, if a fraud claim is too vague during discovery, the claim "will stand unrefuted, placing what may be undue pressure on the defendant to settle the case in order to lift the cloud on its reputation." *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005). Rule 9(b) requires a plaintiff to provide sufficient specificity to allow a defendant accused of fraud to respond "swiftly and effectively if the claim is

groundless." *Id.*

In order to plead a fraud-based claim with particularity, the plaintiff "must state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993)(quoting in part *Schiffels v. Kemper Financial Servs.*, 978 F.2d 344, 352 (7th Cir.1992)); *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)(stating that "[t]o meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was made and the method by which the misrepresentation was communicated to the plaintiff. . . [and that a] complaint that attributes misrepresentation to all defendants, lumped together for pleading purposes, generally is insufficient"); *Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 782 (7th Cir. 1999)(stating that "[i]n order to survive dismissal on a Rule 12(b)(6) motion, the complaint "must plead the 'who, what, when, and where' of the alleged fraud"); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992)(stating that Rule 9(b) requires the plaintiff "state the time, place, and content of the alleged communications perpetrating the fraud").

In the instant action, Plaintiffs have utterly failed to meet the requirements of Rule 9(b). Plaintiffs have not identified who exactly made the various representations or presentations to Plaintiffs, or who engaged in discussions with

representatives of Plaintiffs. Plaintiffs acknowledge in their answer to the motion to dismiss that they merely allege in the complaint in a general fashion that "Defendants" made the representations, presentations and engaged in the alleged discussions. (Compl. Par. 15-17). No specific individual is identified in the complaint in regards to any statements alleged by Plaintiffs and Plaintiffs have not stated the time or place of the alleged statements by Defendants. The complaint refers only vaguely to the time period during which Plaintiffs had contact with ePartners and Defendants, indicating that the alleged statements were made sometime after September 2003. (Compl. Par. 11). Plaintiffs have also failed to make clear how the alleged fraudulent statements were conveyed to Plaintiffs. The complaint makes a vague reference to certain statements that were made "on-line and in person," but fails to explain which statements were made in person and which were made "on-line." Neither does the complaint explain the manner in which the other alleged statements were conveyed.

All of the above information that is lacking in Plaintiffs' complaint should have been in Plaintiffs' possession and in Plaintiffs' complaint. Plaintiffs claim that Defendants met with them in Illinois and made representations to Plaintiffs. Plaintiffs thus should have been able to present allegations concerning when and how the representations were made to Plaintiffs. Therefore, we grant Savant's motion to dismiss the fraud-based claims (Counts II and III).

## B. Publicity Act Claim (Count IV)

Savant argues that it is entitled to summary judgment on the Publicity Act claim (Count IV) because this court does not have subject matter jurisdiction over the claim. A district court has diversity subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ." 28 U.S.C. § 1332. Savant argues that this court lacks subject matter jurisdiction over the Publicity Act claim because the jurisdictional amount in controversy requirement is not met. According to Savant, the Publicity Act only provides a remedy of $1,000 per violation and therefore it would be difficult for Plaintiffs to show sufficient violations to meet the $75,000 amount in controversy threshold.

Defendants' argument lacks merit on this point. First, it is yet to be determined if, consistent with the facts provided in the complaint, there were sufficient violations to meet the amount in controversy requirement. Second, Savant is entirely mistaken in its contention that Plaintiffs must meet the amount in controversy requirements separately for each individual count. Although the Seventh Circuit has stated that "multiple persons' claims cannot be combined to reach the minimum amount in controversy," *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977 (7th Cir. 2000), the Seventh Circuit has made it clear that diversity subject matter jurisdiction relates to "federal jurisdiction over 'civil actions' satisfying the required minimum amount in controversy, 28 U.S.C. § 1332(a), not over counts, thus

permitting the plaintiff to aggregate the stakes in his separate claims or counts to come up to the minimum." *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998). Finally, Savant's position is entirely without merit because this court has subject matter jurisdiction over Count IV pursuant to 28 U.S.C. § 1332(a), and thus would have supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### C. Lanham Act Claim (Count V)

Savant argues that it cannot properly respond to the Lanham Act claim, and requests that the court either strike paragraph 52 of Count V or require Plaintiff to make a more definite statement in regard to Count V. Savant first complains that confusion is caused by the reference in Count V to the allegations in Count IV. However, Savant's claimed confusion in this regard is not plausible. The mere reference to the allegations in Count IV does not cloud the meaning of the claim alleged in Count V. Savant also complains about the irrelevant "surplusage" that is included in Count V. However, the allegations complained of by Savant do not warrant requiring Plaintiffs to amend their complaint, and a federal district court cannot "dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading." *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)(stating that to hold otherwise "would cast district judges in the role of editors, screening complaints for brevity and focus;

they have better things to do with their time").

Savant also argues that "[i]f the Corporate Plaintiffs are attempting to state a False Advertising Claim, they should be required to concisely state that is the nature of their claim" and "[i]f the Corporate Plaintiffs are attempting to state some other cause of action under the Lanham Act, again, they should be required to so state." (Sav. Reply). Perhaps Savant believes that Plaintiffs "should be required" to set forth the precise cause of action alleged in Count V, but such is not the law under the federal notice pleading standard. The Seventh Circuit has made it clear that a plaintiff does not have to plead specific causes of action, and that the allegations of a complaint should not be dismissed for a failure to state a claim, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992)(stating that under the federal notice pleading standard, "[i]nstead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations"); *Higgs*, 286 F.3d at 439 (stating that plaintiffs "don't have to plead legal theories"); *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 600 (7th Cir. 2001)(indicating that "plaintiffs are not required to plead legal theories").

Plaintiffs allege that Savant utilized Elgin's name without its consent and placed Martin's allegedly inaccurate statements on the Savant website without prior

19

consent by Plaintiffs. Plaintiffs have provided sufficient allegations to provide notice to Savant of a Lanham Act false advertising claim. *See, e.g., Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999)(explaining Lanhan Act false advertising claim). Despite Savant's protests about the confusion regarding the claim alleged in Count V, Savant specifically identifies the false advertising claim in its reply, and its motions seeking to contest the claim and require additional pleadings is not meritorious. Therefore, we deny Savant's motion to strike portions of Count V and deny the request for a more definite statement in regards to Count V.

## III. Fraud Counter-Claim (Count III)

Plaintiffs seek a dismissal of the fraud counter-claim (Count III). Plaintiffs do not argue, as Savant did in regard to Plaintiffs' fraud claims, that Savant has failed to plead the fraud counter-claim with particularity. Rather, Plaintiffs contend that Savant has failed to plead all of the elements of a claim for fraud by omission. Specifically, Plaintiffs complain that Savant has not "allege[d] that Corporate Plaintiffs had a duty to speak. . . ." (P Mot 2). However, Plaintiffs' focus upon the various elements of a fraud-by-omission claim and its facts that match up with the elements is improper. Under the federal notice pleading standard, such a type of analysis is not employed in determining whether or not a plaintiff has stated a claim. *See Head v. Chicago School Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000)(stating that the plaintiff was not required under the notice pleading standard to

20

"plead[] sufficient facts to establish the legal elements of his claim."); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). Under the federal notice pleading standard a plaintiff is only required to provide a defendant with notice of the claim and clearly is not, as Savant argues, required to make specific allegations such as "allege that Corporate Plaintiffs had a duty to speak. . . ." *Kyle*, 144 F.3d at 45; (P Reply 2). Savant has alleged sufficient facts that, when making all inferences in his favor, could if proven true indicate that Plaintiffs had a duty to speak and failed to do so.

Whether or not Savant will be able to point to sufficient evidence that shows that Plaintiffs had such a duty to defeat a dispositive motion or to prevail at trial is another matter that is not before this court at this time. Plaintiffs attempt in their motion to dismiss to draw the court into an evidentiary inquiry as to whether or not Plaintiffs had a duty to speak, arguing that Savant has not "show[n]" that Plaintiffs had a duty. (P Mot. 4). Plaintiffs also argue that "it is obvious" that Plaintiffs had no such duty and criticize Savant's contentions in regard to this issue as being presented "rather lamely." (P Mot. 4, 6). Further, Plaintiffs refer to the fraud counter-claim as a "baseless claim." However, we shall not be drawn into an inquiry of the merits of the counter-claim which would be premature at this juncture. The issue before us is whether the parties have stated a claim and we find that Savant has alleged sufficient

facts to state a valid claim. Therefore, we deny Plaintiffs' motion to dismiss the fraud counter-claim (Count III).

## CONCLUSION

Based on the foregoing analysis, we deny the Cawley's motion to dismiss. We grant Savant's motion to dismiss the fraud-based claims (Counts II and III), and we deny Savant's motion to dismiss the Publicity Act claim (Count IV). We also deny Savant's motion to strike and motion for a more definite statement in regard to Count V. Finally, we deny Plaintiffs' motion to dismiss the fraud counter-claim (Count III).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 14, 2005